UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARANDA BUCK,

    Plaintiff,                                      Case No. 06-13406
                                                   HON. BERNARD A. FRIEDMAN

vs.

ADRIAN TRAINING SCHOOL, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    Introduction**

Plaintiff Maranda Buck, a minor and detainee at Defendant Adrian Training School ("Defendant" or "ATS"), filed this action under the Eighth and Fourteenth Amendments of the U.S. Constitution and the Michigan Constitution, asserting various constitutional violations by ATS employees, including failure to protect her from sexual abuse by ATS employee Joe Tindall, failure to provide her with necessary medical and psychological treatment following such abuse, deliberate indifference, and failure to report Tindall's sexual abuse as required by Michigan's Child Protection Law, MCL 722.622 *et seq.*

Defendants Sandra Bow and Marilyn Hill have filed a motion to dismiss and/or a motion for summary judgment. Defendants' motion for summary judgment is based on their argument that they are entitled to qualified immunity, or that there are no genuine issues of material fact to dispute, and they are entitled to judgment as a matter of law.

1

## II. Facts

In late July, 2003, Plaintiff, Maranda Buck, at age 16, was placed at ATS by order of the Oakland County Juvenile Court. At the time of her placement, ATS was a closed, medium security juvenile detention facility, which housed both male and female youth. The youth were housed in cottages, and each cottage had its own staff, including both male and female Youth Specialists. Plaintiff was first placed in West Williams Cottage, the in-take facility for ATS, where she spent two weeks. Defendant Tindall was a Youth Specialist, and Plaintiff's initial supervisor at West Williams.

After two weeks at West Williams, Plaintiff was moved to East Williams. Defendant Don Howard was the Program Manager for West Williams, and Defendant Marilyn Hill was the Program Manager for East Williams during Plaintiff's stay there. The Program Manager worked during the day, and oversaw the Youth Specialists and cottage programs. The Director of ATS oversaw the entire facility. At the time of Plaintiff's arrival, the Director was Dennis Swiggum.

Upon her arrival at ATS, Plaintiff underwent an orientation program. She was advised of the prohibition on sexual activity between staff and youths, and was informed of ATS's grievance procedure, to be used if youth felt that she was being mistreated by a staff member in any way.

Each cottage at ATS had three shifts, with the overnight shift occurring between 10pm and 6am. Plaintiff states that there were not any female staff members on the overnight shift while she was housed at West Williams. Defendant Tindall first sexually assaulted Plaintiff on her second day at ATS. Tindall's sexual assault of Plaintiff occurred over the course of multiple nights, while she was housed in both West and East Williams.

Defendant Hill developed the training program for Youth Specialists, and indirectly managed Tindall. She also instituted the rules regarding the interaction between staff and residents. These rules did not prohibit male staff members from interacting with female residents. Hill was aware that male staff members, including Tindall, had access to female residents during their overnight shifts without any female supervision.

Tindall was hired as a Youth Specialist in December, 2001. Prior to his employment, he was subjected to interviews, reference checks, and criminal history and sex offender registry report checks. Upon his hiring and throughout his employment at ATS, Tindall underwent approximately 240 hours of employment-related training, including training on personal boundaries, behavior management for juvenile offenders, sexual harassment policies and mental health issues. He performed his job well, and was a candidate for promotion.

Tindall, however, was subsequently charged with, and plead guilty to, the sexual assault of minor female residents of ATS. The Michigan State Police investigation of Tindall indicates that Tindall's sexual assault of at least six girls began at least as early as April 2003, about four months before Tindall's first sexual assault of Plaintiff.

The investigation, charges, and guilty plea came about following a September 24, 2003 visit to ATS by a Child Welfare Licensing Consultant, Linda Tansil, to interview Tindall in relation to allegations by a former female resident at ATS that Tindall had engaged in sexual acts with her while she was at ATS. Tansil was informed that Tindall was not working that day. She did not tell the Program Manager, Don Howard, the nature of the allegations against Tindall that she was there to investigate. Tansil returned to ATS on September 26, 2003, and informed Don Howard and Director, Dennis Swiggum, of the allegations concerning Tindall having sex with

the former female resident.  Based on such allegations, Tindall was placed on administrative leave that day, pending an investigation.  On September 29, 2003, Howard conducted an investigatory interview with Tindall, during which Tindall denied the allegations.  Howard then referred the investigation to Christian Clauer, an investigator for the Bureau of Juvenile Justice.

On October 7, 2003, Clauer interviewed Plaintiff regarding statements by another youth that Plaintiff may have had a sexual relationship with Tindall.  Plaintiff denied any such involvement, and stated that the youth was just spreading rumors.  Clauer interviewed other girls rumored to have been sexually involved with Tindall, but each girl denied such activity.

On November 8, 2003, Don Howard forwarded the investigation into Tindall's conduct to the Adrian Post of the Michigan State Police.  That day, the Michigan State Police conducted a polygraph examination of Tindall concerning the original allegation of sexual acts between Tindall and the former female ATS resident.   After failing the polygraph examination, Tindall confessed to engaging in sexual acts with six female ATS residents, including Plaintiff, while he worked overnight shifts.

On November 10, 2003, a Child Welfare Licensing Consulting interviewed Plaintiff.  Plaintiff denied a sexual relationship with Tindall.  On November 17, 2003, after being told of Tindall's confession, Plaintiff admitted to the Child Welfare Licensing Worker that she had had a sexual relationship with Tindall.  Plaintiff then also notified trooper Diane Weakland of the Michigan State Police of Tindall's conduct.  Plaintiff admitted to trooper Weakland that she had lied earlier in the investigations because she did not want to get Tindall into trouble.

Tindall was terminated from ATS on November 12, 2003, having never returned to ATS from his suspension in September.  He was subsequently charged in Lenawaee Circuit Court

with a total of twelve counts of varying degrees of criminal sexual conduct. In May 2004, Tindall plead guilty to one count of Second Degree Criminal Sexual Conduct.

ATS Director Dennis Swiggum retired in February, 2004. Defendant Sandra Bow became ATS Director on November 1, 2004.

### III. Summary Judgment Standard of Review

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

### IV. Analysis

Plaintiff's Amended Complaint raises a total of five claims against Defendants:

Count I:     Violation of Due Process Rights under the 14th Amendment

Count II:    Gross Negligence

Count III:   State Statutory Violation of the Michigan Child Protection Law

Count IV:    Due Process Violations under the 8th Amendment

Count V:     Violation of Due Process Rights under the Michigan Constitution

### A. Defendant Bow

In order to assess liability against a Defendant, Plaintiff must be able to prove that such Defendant made some act that was contrary to law, or knew of another's actions which were contrary to law and failed to act upon that knowledge. Plaintiff has not directly made any allegations against Defendant Bow. Plaintiff's deposition testimony indicates that she does not know who Defendant Bow is, and Defendant Bow was not the Director of ATS during the time that Tindall perpetrated the acts described above against Plaintiff. Accordingly, claims against Defendant Sandra Bow are dismissed.

### B. Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages when officials have not violated a clearly established statutory or constitutional right of which a reasonable person would have known. Mitchell v. Forsyth, 472 U.S. 511 (1985). The contours of the right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Qualified immunity is only extended to government officials and officers when their actions are objectively reasonable in light of the clearly established legal doctrines at the time those actions were taken. City of Elyria, 502 F.3d 484 (6th Cir. 2007). In order to determine whether a government official is entitled to qualified immunity, the Court applies a two-step inquiry: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Swiecicki v. Delgado, 463 F.3d 489, 497-98 (6th Cir. 2006). For a right to be "clearly

established," the right must be clear enough that a "reasonable official" would know that his actions would violate that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Accordingly, the inquiry to be made is: (1) do the facts demonstrate a violation of Plaintiff's rights, and (2) would an objectively reasonable officer or official in Defendants' positions believe that Defendants' actions would violate Plaintiff's rights? City of Elyria, 502 F.3d at 491.

The parties agree that Plaintiff had a constitutional right to be free from sexual abuse by a state actor, and that such right was violated. The question is whether Defendants knew or reasonably should have known that the actions they took within the sphere of their official responsibility as employees of ATS would violate Plaintiff's constitutional rights.

Plaintiff alleges in her First Amended Complaint that Defendants knew of Tindall's conduct, that they were deliberately indifferent by allowing Tindall to engage in such conduct, that Defendants "encouraged, condoned, authorized and ratified Tindall's conduct, that they knew that Plaintiff faced substantial risk of serious harm, and that they exhibited conscious indifference to the rights, welfare and safety of Plaintiff. Dft. Exh. 1.

Plaintiff, however, has not offered any evidence that Defendants disregarded, or knew about, Tindall's conduct, prior to the start of the investigation into Tindall's conduct and his immediate suspension. Plaintiff testified in her deposition that she told her ATS counselor, Helen Henricks, about the abuse before the investigation into Tindall began. Pltf. Exh. 1, pp. 67-68. However, Helen Henricks, in her deposition, testified that she did not inform Defendants of Plaintiff's allegations until after the investigation had begun and Mr. Tindall had been placed on leave. Pltf. Exh. 9, pp. 16-17. The earliest date at which the evidence demonstrates Defendants'

knowledge of Tindall's conduct is September 26, 2003, the date that Child Welfare Licensing Consultant, Linda Tansil, told them of her investigation. Tindall was suspended that same day.

Plaintiff's claim that Defendants are liable in a supervisory capacity for the harm she suffered by Tindall constitutes a "supervisory liability" theory of wrongdoing. Doe ex rel. Doe v. City of Rosevill, 296 F.3d 431 (6th Cir. 2002). "Supervisor liability" standards apply where a plaintiff seeks to hold administrators or supervisors liable for constitutional injury caused directly by someone else. Id.

The Sixth Circuit has explained:

> [I]t is not enough for the plaintiff to show that the defendant supervisors were sloppy, reckless or negligent in the performance of their duties. Rather, we said, "[a] plaintiff must show that, in light of the information the defendants possessed, the teacher who engaged in sexual abuse showed a strong likelihood that he would attempt to sexually abuse other students, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of students." Claiborne County, 103 F.3d at 513 (internal quotation marks omitted). Put another way, we said, the plaintiff must show that the "defendants' conduct amounted to a tacit authorization of the abuse." Id.

Id. at 439.

Here, a similar situation presents itself. Plaintiff must demonstrate that "in light of the information the defendants possessed," Tindall "showed a strong likelihood that he would attempt to sexually abuse" ATS residents. Plaintiff has failed to demonstrate that Defendants possessed information that would lead them to believe that Tindall showed a strong likelihood that he would sexually abuse Plaintiff or any other residents.

Accordingly, qualified immunity is appropriate, and Plaintiff's federal constitutional claims, Counts I and IV of the First Amended Complaint, are dismissed.

**C.     Plaintiff's State Law Claims**

Defendants argue that they are entitled to qualified immunity on Plaintiff's state law claims. Michigan law provides:

> (2) Except as otherwise provided in this section . . . each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person . . . caused by the . . . employee . . . while in the course of employment or service . . . while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

M.C.L. 691.1407(2).

The first two criteria are clearly met. The final prong, gross negligence, is defined for purposes of this statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. 691.1407(7)(a). In order to defeat governmental immunity, Plaintiff must allege facts to support a claim of gross negligence. Here, as discussed above, Plaintiff has not offered evidence of negligence by Defendants. While Plaintiff offers evidence that the abuse occurred for months prior to the investigation, and that rumors circulated among the residents regarding Tindall's behavior, Plaintiff does not offer any proof showing that Defendants were aware of Tindall's conduct with Plaintiff or with other students. The evidence demonstrates that Defendants suspended Tindall immediately after learning of the accusations against him, and took all necessary steps to proceed with an investigation into the allegations.

Plaintiff argues that Defendants can not seek governmental immunity, because Defendants' actions violated the Michigan Child Protection Law, MCL 722.622 *et seq*.

Accordingly, Plaintiff argues, Defendants' actions were ultra vires, and therefore, outside of the scope of MCL 691.1407. The Michigan Child Protection Law requires that a person in Defendants' positions is required to report suspected child abuse or neglect to the Family Independence Agency ("FIA") when they had reasonable cause to suspect abuse or neglect. Plaintiff contends that Defendant failed to fulfill its obligations. However, such contentions are in error. The documentary evidence demonstrates that it was the FIA that first informed Defendants of the suspected abuse. Dft. Exh. 11. To argue that Defendants should have re-informed the FIA of the suspected abuses is circuitous. Defendants fulfilled their obligations when they immediately involved the Department of Human Services' Bureau of Juvenile Justice and the Michigan State Police to conduct investigations, after learning of the allegations from the FIA. Plaintiff's claim that Defendants violated the Michigan Child Protection Law is unfounded, and Defendants maintain their governmental immunity on Plaintiff's state law claims.

Accordingly, Plaintiff's state law claims against Defendants are dismissed.

## V. Order

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

Dated: May 23, 2008         s/Bernard A. Friedman_____
       Detroit, Michigan    BERNARD A. FRIEDMAN
                            CHIEF UNITED STATES DISTRICT JUDGE